It's a matter of William Gross against industrial commission 410-0615. Counsel, please. May I please have support? Mr. Gross, my name is Bruce Kossor and I represent William Gross. This case was denied at arbitration. The commission affirmed that denial and the circuit court confirmed the commission's decision. The case comes here as a manifest weight question. The diseases before the commission were pneumoconiosis, histoplasmosis, and COPD. The commission found there was no pneumoconiosis, that there was histoplasmosis, but the minor exposure to the cause was too remote to be compensable, and that the COPD was caused solely by cigarette smoking. I'm not going to argue the pneumoconiosis or the histoplasmosis issues. Like I said, this is a manifest weight argument. I think the commission is wrong, but they get to make their call, and if there's evidence of substance in the record, support it. It stands. But in this case, the COPD issue is different. The cause of Mr. Gross' obstruction is the issue that this case turns on. In order for there to be a finding that it was solely from smoking, you have to believe that coal mining didn't play any role at all, no cause whatsoever, no aggravation whatsoever, but the record's full of evidence to tie the COPD to coal mining. And the only thing in this record to support the commission's decision on the causation of the COPD is Dr. Wren's unsupported opinion. He said it was from smoking rather than coal mine dust, and he gave only one reason. It was based on the pattern that he saw in the pulmonary function testing. On direct examination, he said that the pattern seen in Mr. Gross is the pattern associated with smoking versus the pattern seen in co-workers' pneumoconiosis. Well, co-workers' pneumoconiosis is the wrong disease. The disease in question is COPD from coal mining. Now, if that was the only time he said it, somebody might say that, well, when he said co-workers' pneumoconiosis, he meant to include COPD from mining in that definition. So on cross-examination, I asked him if the pattern he was talking about was the pattern for co-workers' pneumoconiosis, and he said that the pattern was with co-workers' pneumoconiosis rather than obstructive disease caused by coal mining. Mr. Ossorio, your argument has, I think, in light of the length of time that the claimant worked in the occupation, some superficial appeal. Sometimes in these cases, we try and look at something objective. What do you make of the fact that it isn't just the doctor's opinion? Didn't the pathologist look at a section of the claimant's lung and found, what is the opinion, he did not find any evidence of any occupational disease? Isn't that significant? No, what the pathologist found on the bronchoscopy was he found chronic bronchitis. Now, Dr. Wren, Freeman's expert, said he was wrong. He didn't say why, he didn't have any path himself, but he wrote that opinion off. Therefore, if Freeman writes it off, I'm in agreement. He's a treater, not an expert in this area. So I think that that's uncontested. What about the fact that the claimant was a smoker for many years? We have this all the time, and the truth is, no evidence on the effects of smoking on the lungs is relevant to this claim. Nothing about smoking makes any difference, unless there would be evidence that smoking cures emphysema and COPD from coal mining, or that it prevents COPD and emphysema from coal mining, or that you can only have COPD and emphysema from one thing at a time. The only relevant questions in this case are whether coal mining can cause COPD, whether coal mining can aggravate COPD, and when you have a patient who has COPD, and they've been exposed to both smoking and mining, whether there's any way to separate out the smoking from the mining. So it was Wren's opinion that claimants suffer from mild pulmonary emphysema owing to tobacco smoking. Is that his opinion? Yes. In fact, rather than coal mining does. Couldn't the commission have seized on that opinion? No, because he impeached himself. When he said that, he said the reason is because of the pattern on the breathing tests. And so he went on and said that COPD from smoking is different than COPD from coal workers' pneumoconiosis. I asked him on the class exam. He said it's different than coal workers' pneumoconiosis, and that's irrespective of COPD from coal mining. In other words, he's talking about the wrong disease. Coal workers' pneumoconiosis and COPD from coal mining are two different things. You diagnose pneumoconiosis by x-ray. You diagnose COPD from the breathing tests. They're almost opposite, in fact, on what they do to the body. So could there ever be a case where a smoker, a smoking coal miner, or a coal miner with a history of smoking, it could be determined that, and he has COPD. You're saying in every case, is coal mining work would be a contributing factor? I can't say every time, because there may be a case come up where there's something that I'm not ready for. But when the ball's right down the middle of the fairway like this, the problem is you have a disease that can be caused by smoking or coal mining. You go to NIOSH, the Department of Labor, the American Arrest Society, they say the risk is the same. And then even Dr. Wren tells you that the breathing test won't tell you which one it is. There's no way to tell them apart. And you add to that what Dr. Wren said is at the cellular level, when the smoking of coal dust comes in and hits the lung tissue, there's only a couple things the lung tissue can do in response to the thousands of insults it may have. And that the response from smoking and coal mining is the same. So once you have it, you can't reverse engineer and look back and see what caused it. Therefore, it would be irrational to say it was only smoking, and irrational to say it was only mining. Here we have a doctor who did say it was only smoking. And the commission. He did, and I hate to repeat myself, but it's not only the best shot I got, it's the only shot. And he had the wrong disease. I think he shot himself in the foot. He said it was the wrong disease. And then he has all this other stuff he said. But here's six things he said about coal mining and COPD. First, when there is COPD, as I told you a minute ago, at the cellular level, the effect of cigarette smoke and coal mine dust are the same. No way to tell them apart. The body can be irritated by hundreds of agents, but it can only have a couple of responses to them. And since both smoking and mining cause the same reaction in the lung tissue, there's no way to tell what caused it or what caused how much of it. Senator, can I ask you a question? If actually there is no way to tell what caused it or how much of it, how do you prove your case? I think you'd have to look at them individually. Say, have you proved that smoking is in there? Have you proved that coal mining is in there? Well, sure you have, because you look at the evidence on smoking, and we don't deny this, so they don't have to prove as much as we do. Smoking is bad for the lungs. It causes obstructive disease. I accept that. Now we put that aside, because that in no way means you couldn't also have a contribution from mining. And you say, did mining contribute? And you've got all the agencies and these six things that Dr. Wren said that ties it to it. And you look at them one at a time and say, yeah. There's no way to exclude coal mining. And I hear within your question, is there a way that this evidence can make it sure that it's in there? No, not for smoking and not for mining. But there's also no way that it can take either one out. Yeah, but you were the burden party. He doesn't have to take it out. You've got to put it in. And I think the evidence does put it in when it says that coal dust causes smoking. I'm sorry. Coal dust causes emphysema and COPD. He had sufficient exposure to cause it. And then it's the same risk, smoking and coal mining. And if that doesn't get it done, then I can never get it in. Well, what about the scarring of the lungs? Can you look at that lung tissue and identify the damage to that lung tissue based on one agent versus another? I mean, for example, tobacco use versus exposure to coal dust. All right. Now I'm going to have to go just a little bit outside the record here. But coal mine dust that causes coal worker's pneumoconiosis causes scarring. Gets in there. The body has its reaction over and over and over. And after 10 years of constant inflammatory reaction, the fibroblasts come in. You get scarring around that trapped coal dust. That's coal worker's pneumoconiosis. And it ends up, it can cause an obstruction, but classically, it restricts it. You can't open it up all the way because the scar tissue is not pliable. On the other hand, when you have COPD from any source, it causes a relaxation of the tissue. If it's enough, it will cause that bulimicin where there are actually holes like Swiss cheese in the lung. So in that one, you can't exhale. You have an obstructive problem. So they're almost two conflicting diseases. But what you said is correct. When you see a scar tissue on my arm, did it get put there by a knife, by falling out of a tree, by a bicycle? I don't know because the scar is the same no matter what did it. So you have to go back to the patient history. And you say, well, this guy was a knife fighter. So I think that's from a knife. This guy has obstructive disease. Coal mining can cause as much as smoking. He had 39 years of coal mining. That's good enough. In essence, aren't you saying, though, and I understand there's a compelling human argument to be made, you seem to be saying in essence, are you not a tie in the evidence, can't rule it out, tie in the evidence goes to the claimant? I have nothing against that statement. I'd like that to be true. But that's not what I'm saying. I'm not saying it well. What I'm saying is the two have to be separated. And there's no way, as Justice Hoffman says, for me to say this evidence proves it was coal mining. Just as the other side can't say this evidence proves it was smoking. We've got the two things. I think what's important here is no evidence says you can take it out. You've got all this evidence saying it's most likely there. We hear the hoof beats. We see the dust. We don't see the horses yet. But we have all the evidence putting it in, and nothing can take it out. Let me ask you something. How do you then make that argument, if you alluded to, and not do violence to the well-settled doctrine, you bear the burden of proof? Sure. So how did you meet your burden of proof if there's a tie in the evidence, if there's two equally plausible arguments that you're saying? Well, since I'm biased, it's very easy to me to see. Well, you appreciate your candor. What you have to do with this smoking and coal dust-induced disease is look at them separately. You've got to bifurcate. And you've got to say it can be caused by both. Therefore, any evidence that talks about how bad smoking is is irrelevant to the question. The question is, can coal dust cause it? And did coal dust cause it? Now, the truth is, if you sit here and you bifurcate them, and you say, let's pretend there was no smoking, well, obviously it would be in there. Coal dust would be in there. If he's smoking, and he wasn't a coal miner, obviously it wasn't from a coal mine. You don't have it largely. You've got them both. This is a liberal act. It's to do justice in this system. This gets back to my question, though. I mean, aren't you really arguing that if any smoking coal miner who develops COPD as a matter of law, it's compensable? That's pretty much going to be it. And it's not that long ago that in the early 90s, and in the 90s, a doctor would look at you in the face and say, oh, this can't be from coal mining. Coal mining caused it restricted. Smoking caused it obstructed. Can I ask a question? I've had for years troubles with a number of our cases that suggest that a plaintiff makes his case when he introduces expert medical testimony that A could or might have caused B. Now, that doesn't establish proximate cause. Certainly it's valid testimony that this mechanic could result in this effect. But it doesn't establish that it did. Now, if you have expert medical testimony that says within a reasonable degree of medical certainty, A did cause B, then you've got proximate cause. Now, both of them are legitimate pieces of evidence. But the former doesn't establish proximate cause. The plaintiff's still got to come up with something more for there to be a finding of proximate cause than this might have or could have. That's speculation. That doesn't establish within a realm of probability. I'm kind of comparing that one to the question Justice Stewart had. What you have to do is combine those exposures. And you've got two that can do this. And then you say, well, can I take one out? You can't take it out. And then you have to remember that the law says no matter how little. So that what you really got to prove is that there was no contribution whatsoever from Goldust. No aggravation. No causative. And I'm saying in my view this overwhelming pile of evidence is against the manifest way. Is it 100% airtight? No. Does it become against the manifest weight of the evidence because of the length of time that he was exposed? Or could you establish the same argument for some guy that worked in the mine one day? It becomes against the manifest weight of evidence when, Justice Stewart, their doctor says he had sufficient exposure to cause it. That locked it up for me. If that testimony hadn't been in there, I wouldn't be able to answer your question. But it is in there. Okay. Also, like I said, no matter how much, no matter how little, it's contention. Also, the aggravation thing. Let's say you believe that this COPD emphysema was caused solely by smoking. What about 39 years of exposure to aggravated? It didn't make it any worse at all going and breathing that Goldust every day? I think it's illogical. And here's where we get to the importance of this weighing thing. In this case, we've got a pile of evidence, a mountain of evidence. And NIOSH, Department of Labor, American Thoracic Society, and Dr. Wren himself giving testimony to support this pile of evidence. And what's the evidence for Freeman? Just that Dr. Wren says no. And then he impeaches himself because he says he was talking about the wrong disease. It's a manifest weight question. I've got a hell of a burden. And I don't argue too often. And when I do, I don't win it at all. But this is a different case. And this brings in the authorities that Dr. Wren disagrees with. In other words, the arbitrators and the commission has to believe something. We believe Webster's Dictionary for spelling. You've got to believe the Department of Labor, NIOSH, and the American Thoracic Society have something, somehow, about lung disease. More than the individual doctor who's hired by the company. I believe that to be true. Well, the arbitrator believed Dr. Wren. I'm not sure what the arbitrator believed. Evidently, he went on that side. It's clear to me that he simply believed him. Well, here's the problem we get in with black lung. And it's a very counterintuitive area of the law. Frustrating area of the law. You get a new arbitrator, they look and say, oh, look at all that smoking. I think that did it. And if you didn't know about black lung, that's an easy decision to arrive at. Until you get in and you say, you know what? I really can't take the mining out of it. And you know what? The issue really isn't whether smoking caused the damage. We say that from day one. Smoking's bad for you. Your time's up, Counselor. You have time on rebuttal. Thank you. Counselor, please. May it please the Court. My name is Ken Wirtz, and I represent the Ampoulee Mystery Resort. I'm going to very briefly touch on the issue of manifest weight in this case. Dr. Wren testified that this gentleman had emphysema due to smoking. He testified that he had a mild obstructive ventilatory defect due to the emphysema caused by tobacco use. And he testified that he could sort out whether that was due to his dust exposure or smoking based upon the pattern of obstruction that he had in the spirometry. And he cited for that a NIOSH document that Mr. Wasore cited as well. So he specifically identified the disease and its cause, and the Commission agreed with him. At pages 37 to 38, I apologize, this is of his deposition rather than the record, he testified it's within a reasonable degree of medical certainty that this gentleman's pulmonary emphysema resulted from his years of tobacco smoking rather than exposure to comide dust. And the Commission agreed with him, the arbitrator agreed with him, the Commission agreed with him, and that's their job. But I like a lot more the questions that you, Justice Hoffman, and Justice Hudson posed. And I think, and Justice Stewart was kind enough to lecture for the ISBA at the last section council seminar. He's been cited quite a bit this morning. He got the highest marks of all the presenters. So there's a reason for him being cited. It's probably because I had Justice Rarick presenting with him anyway. Justice Rarick was very good as well. You'd be happy to know. I know you sat with him, Justice McCullough, for many years. But I don't know if you were there or not, but in my discussion, one of the things I brought up is the very issue you raised. And I think the appropriate question to ask an expert, given what the burden of proof is in our cases, whether it's work comp or occupational disease, is do you have an opinion within a reasonable degree of medical certainty whether it is more probable than not that the lifting, the exposure, whatever, was a cause? Well, that's the approximate cause opinion. Right. I don't think that's the way to frame it. Possibility. That's right. It's not just enough do you have an opinion whether it might or could. I agree with you. That's not right. But you know what? How many times have you seen that raised? Oh, I've seen it in too many opinions. It's very loose language, and we've used it before. How many times have you seen, for instance, me, the defense attorney, or, you know, whatever, say I object to that form of that question? Well, I'm not sure the form of the question is objectionable. I mean, look, a doctor can say, do you have an opinion within a reasonable degree of medical certainty as to whether ice skating can cause a broken leg? Yes, I do. It can. But that's different than saying, do you have a reasonable degree of medical – can you say within a reasonable medical certainty that ice skating did cause a broken leg. Or was more probable than not. Or more probable than not. Right. That establishes the approximate cause. Right. The former does not. I agree. I agree. And I think that we're probably not doing a good job. And when I say we, I'm talking about those members of the bar that you see all the time. Well, I do. And recognizing that. And the reason why I asked about Justice Stewart is I brought this up during – and I can't remember whether you were there or not. But I think that's what we should be doing when we're posing that question because the burden of proof is a preponderance of the evidence. So it is more likely than not. So I think we really should be framing our causation questions, unless, of course, the doctor is just going to say, absolutely this is the cause, you know, without any reservation. Well, your question should be framed – I think you're right – within the realm of probability as opposed to within the realm of possibility. Absolutely. The lawyer does not establish approximate causes. I absolutely agree with that. And I think it's an important point. Whether it is for this case. Presumably the only ask-might-or-could-have is the doctor is not going to give you dead. Presumably. Or I'll be honest with you, Justice Stewart. I think sometimes we're lazy. I'm going to be honest with you. I think the ask-might-or-could-have, when the opposing expert is prepared to say, this mechanism cannot cause this result. Now, one of the things you have to establish is, number one, yes, it could. Right. And number two, within a reasonable degree of probability, it did. So you have both questions that you have to get in. Right. I agree. I agree. I think that's very important. Maybe it's something we need to do. So really, what do we have in this case, then? Well, I wanted to ask – go ahead. Let's go case-specific here. So it's Dr. Wren, you say, does it all for you. Well, he's the opinion that I relied upon in the commission. So what do we ask Dr. Wren? Well, I don't have the questions right here in front of me, but he gave an opinion as to the cause in this case. Now, he didn't say more probable than not. He said the cause was emphysema due to smoking. Within a reasonable degree of medical certainty. Well, he said within a reasonable degree of medical certainty. That's what the cause was. But Justice Goldridge, I did want to answer your question that you posed for Mr. Besore, and it was in regard to the scarring and what you see on a chest X-ray. What you would see if there was co-worker's pneumoconiosis is a nodule or a macule. That's where we get into is it a PQR-type opacity or SPU. So when you're looking at the film and looking for the scarring, if you want to make a diagnosis of black lung, you're looking for that macule. And in this case, significantly, there wasn't – it wasn't there. Or at least let's say this. The people that read the films outside of the experts didn't find pneumoconiosis or, for that matter, the high-resolution CT scan. They didn't find nodules in pneumoconiosis. Mr. Besore conceded that there was no pneumoconiosis. So there was a difference of opinion among the experts. But when you look at the film, you're not just looking for the scarring because you can have scarring due to emphysema due to smoking. And that's actually what was found here. They didn't find the nodules associated with black lung. So I'm not sure if that was what you were asking him or not, but you did have a question about the chest film. So I just wanted to add that. I really don't have anything more to say. I enjoyed your questions because I think they, as I say, not necessarily important in this case, but they are directly important. Sometimes I'm frustrated because I think many practitioners out there think that all I have to do is just say, might or could this be a cause? And to me, that just does not satisfy the burden. And we need to do a better job on that. Thank you. Thank you. Rebuttal, please. It's a target-rich environment. First of all, I want to say, Mr. Wirtz, I'm not conceding there's no pneumoconiosis. Yes, we noticed you winced at that. Pardon me? We noticed you winced at that assertion. I'm not conceding there's pneumoconiosis. I'm just conceding I can't win. Now, a question I got to ask you is, can Dr. Ren be right if he is flat-out, unequivocally wrong, talking about the wrong disease by his own admission twice, on direct and on cross-exam? I say no. I say he impeached himself. He is out. When he says the basis of his decision is co-workers' pneumoconiosis, how it's affected, I say, well, he's out. We're not talking about that disease. The next thing is, smoking doesn't legally – He said, in his opinions, within a reasonable degree of medical certainty, none of the claims diagnoses were either caused or contributed to by his exposure to colon medicine. Yes. And then – And he was diagnosed with COPD. But then when we flesh it out in the deposition, he said why he said that. And the why is, he got the wrong disease. He's talking about pneumoconiosis. And to be truthful, doctors that I like a lot and respect a lot, they'll play that game with you. Because if the lawyer sitting there is not paying attention, he slides the pneumoconiosis in instead of coal dust. You don't know it. Now you've got a bad record that you can't fix. That's why I specifically asked him that question. Well, let me just throw this back out in response to that. I mean, you make some legitimate points. But again, the fact finder, the commission, knows this, right? I mean, they know that there's an inconsistency you're alluding to. So isn't it up to them to resolve this alleged inconsistency in a way to be given to the testimony or the opinion of a doctor? Can't they do that? Justice Hudson, I'm trying to figure out the nicest way I can answer that. And in my world, if I tell you something and you say, why did you say that, and I give you a reason that proves that I couldn't have been right about what I said, well, I can't accept my opinion. Now, I don't think the commission should be able to either because Mr. Gross only has one chance. And that's reckless. It's arbitrary. It's wrong. Dr. Wren proved himself to be wrong. And, you know, that may be what it turns on. But there's medical and there's a legal problem, too. Smoking doesn't legally cure coal mine and dust COPD. But if this decision's upheld, then it does. Because what it means is, if you've got the guy with two diseases and the company can get a doctor to say, regardless of what any authority say, the American Thoracic Society, no matter who, no matter what they say, no matter what he says about his basis, but if he says, within a reasonable degree of medical certainty, it was smoking alone. Well, that's a legal bar to my client winning if it gets to the right arbitrator and then assigned to the right guy on the panel at the commission, and it flows through, and it shouldn't be. I think that, in the very rare case, it's the duty of this panel to say when something's wrong. And I think this is one of those cases, one of the few cases. I don't come up here all the time asking for it. And this one I am. I'm conceiving those other issues, but I can't conceive the COPD because of Dr. Wren's testimony himself. And there's a difference between an injury and a disease. In an injury, the miner gets hit on the head with a rock. The company knows when it happened, who drove the ambulance, how many stitches he had. But when he breathes that rock in over 20 years, they can't believe it. They know he smoked. They know he's getting fat. He's getting old. It's got to be something else. And the truth is, on the could or might, Justice Hoffman, there is no way I can prove it, ever prove it, because it's a disease, not an injury. And that's why we have the O.D. Act. There's a difference between the two. And it's harder to tell. That's why you see so many more of these, the higher percentage of the disease cases, coming to you. Or the company doesn't want to give up. Or the miner doesn't want to give up. It's a little bit inconclusive. And you're talking about the preponderance of the evidence. The preponderance of the evidence has to be overlaid on the disease and the O.D. Act. In other words, I only have to prove 2%. If 2% of the COPD is from mining, it's compensable. If it was not caused at all, but aggravated a little bit by mining, I win. So, yes, I have to have a preponderance of the evidence, only to prove a very small part of that. And I think it's much easier for me to prove that small part than for somebody to say that this exposure, which is just as bad for you as smoking, didn't cause anything after 39 years. It didn't aggravate it in any way. Thank you very much.